# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| STEVEN NELSON, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) Docket No. 2:10-cv-00473-GZS |
| v. | ) ) |
| FORMED FIBER TECHNOLOGIES, INC., | ) ) ) |
| Defendant. | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant's Motion to Dismiss (Docket # 8) Count II of Plaintiff's Complaint. As explained herein, the Court GRANTS the motion and DISMISSES Count II of Plaintiff's Complaint.

## I. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint. Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004). The general rules of pleading require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. — , 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation omitted). Thus, faced with a motion to dismiss, the Court must examine the factual content of the complaint and determine whether those facts support a reasonable inference "that the defendant is liable for the misconduct alleged." Id.

The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). However, the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. In distinguishing sufficient from insufficient pleadings, which is a "context-specific task," the Court must "draw on its judicial experience and common sense." Id. at 1950 (internal citation omitted).

## II. FACTUAL BACKGROUND

Plaintiff Nelson's Complaint includes the following relevant factual allegations. Prior to December 2008, Plaintiff Nelson and others similarly situated were employed by Defendant Formed Fiber Technologies, LLC[1] ("Formed Fiber"), a corporation organized under the laws of the State of Delaware and headquartered and doing business in Auburn, Maine. (Class Action Complaint and Demand for Jury Trial ("Compl.") (Docket # 1) ¶¶ 1, 5.) For at least twelve months prior to the events described in the Complaint, Formed Fiber employed more than 100 employees at its Auburn facility. (Id. at ¶¶ 1, 18, 32.) In November 2008, Formed Fiber representatives orally informed Plaintiff and other employees that it would be laying off employees at the Auburn facility in December 2008 due to declining business. (Id. ¶ 17.) Soon thereafter, on or about December 15, 2008, Formed Fiber laid off approximately 152 out of

---

[1] Plaintiff's Complaint alleges that Defendant is Formed Fiber Technologies, Inc. Defendant states that it is properly identified as Formed Fiber Technologies, LLC.

approximately 300 employees at the Auburn facility. (Id. ¶ 1.) On January 12, 2009, Formed Fiber recalled several employees, including the Plaintiff, but laid them off again on January 23, 2009. (Id. ¶¶ 19, 20.) Formed Fiber gave written notice of the December 2008 and January 2009 layoffs by letter dated February 11, 2009. (Id. ¶ 21.) Approximately one day later, on or about February 12, 2009, Formed Fiber recalled some of the employees it laid off in December 2008 and January 2009; Formed Fiber did not recall Plaintiff Nelson, although he was more senior than several of the recalled employees. (Id. ¶¶ 22.) Formed Fiber did not pay severance to Plaintiff nor others initially laid off on or about December 15, 2008 and who never returned to work following their termination. (Id. ¶¶ 34, 40.)

## III. DISCUSSION

Plaintiff Nelson brings claims against Defendant Formed Fiber on behalf of himself and all others similarly situated for violations of the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2101 et seq. (Count I), and the Maine Severance Pay Act (MSPA), 26 M.R.S.A. § 625-B (Count II). Defendant's Motion to Dismiss seeks to dismiss only Count II of the Complaint, which alleges that Defendant's lay off of approximately 152 out of 300 employees at its Auburn, Maine facility required it to make severance payments to those terminated employees. Defendant argues that Plaintiff's Complaint must be dismissed because, one, the Complaint sets forth only the bare elements of a claim under the MSPA without stating adequate grounds for its allegations, and, two, Plaintiff's Complaint fails to allege that Defendant relocated or terminated its Auburn facility. The question in this case is whether Plaintiff has failed to plead sufficient facts to state a claim for relief under the MSPA in the absence of any factual allegations that operations or production at the facility, or any part or division of the facility, stopped after the alleged layoffs.

3

The Court begins its analysis by identifying pleadings in Plaintiff's Complaint that, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. The Complaint alleges that Defendant "relocated and/or terminated operations at its Auburn, Maine facility," Compl. ¶¶ 33, 39, and that there was a "substantial cessation of commercial operations" under the MSPA, id. ¶¶ 35-38. These bare, conclusory assertions "amount to nothing more than a formulaic recitation of the elements" of a claim under the MSPA and, as such, are not entitled to be assumed true. Iqbal, 129 S. Ct. at 1950. Standing alone, these conclusory legal allegations fail to allege a termination within the scope of the MSPA. However, Plaintiff also alleges that Defendant laid off approximately 152 out of 300 workers, Compl. ¶ 1, and argues that such a layoff constitutes a termination under the MSPA.

The Court next analyzes the text of the relevant statute. See SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 173 (1994)). The MSPA requires that "[a]ny employer who relocates or terminates a covered establishment" pay its "employees for severance pay at a rate of one week's pay for each year of employment by the employee in that establishment." 26 M.R.S.A. § 625-B(2). The statute defines a "covered establishment" as "any industrial or commercial facility or part thereof which employs or has employed at any time in the preceding 12-month period 100 or more persons." 26 M.R.S.A. § 625-B(1)(A). "Relocation" is defined as "the removal of all or substantially all of industrial or commercial operation in a covered establishment to a new location within or without the State of Maine, 100 or more miles distant from its original location." 26 M.R.S.A. § 625-B(1)(F). "Termination" is "the substantial cessation of industrial or commercial operations in a covered establishment." 26 M.R.S.A. § 625-B(1)(G).

Plaintiff alleges that Formed Fiber relocated or terminated operations at a covered establishment when it laid off approximately 152 out of 300 total employees at its Auburn plant because such a large-scale layoff constituted a "substantial cessation" of operations. Plaintiff does not allege that Formed Fiber relocated, completely ceased operations or terminated a particular division or part of the Auburn facility. Accordingly, the Court's inquiry centers on the definition of "termination," and, in particular, the meaning of the term "substantial cessation," which is not defined in the MSPA.

In determining the meaning of "substantial cessation," the First Circuit instructs that "in the absence of either a built-in definition or some reliable indicium that the drafters intended a special nuance," the term should be given its ordinary meaning. Tambone, 597 F.3d at 442-43 (citing Smith v. United States, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accordance with its ordinary or natural meaning."); In re Hill, 562 F.3d 29, 32 (1st Cir. 2009) (stating that words in a statute carry their ordinary meanings if not specifically defined)).

"One reference point for determining the ordinary meaning of a word is its accepted dictionary definition." Id. at 443 (citing Smith, 508 U.S. at 228-29). Common and representative dictionary definitions of "substantial" include "material," "true," and "real." See The American Heritage Dictionary of the English Language 1727 (4th ed. 2000). Common and representative dictionary definitions of "cessation" include "a bringing or coming to an end" and "to stop." Id. at 305. These dictionary definitions indicate a true stoppage of operations rather than a slowdown or reduction of operations. To the extent Plaintiff attempts to argue that a fifty percent reduction in staff qualifies as a "substantial cessation" of operations at Defendant's Auburn facility, the ordinary meaning of substantial cessation is inconsistent with this argument.

The Legislature's choice of specific language in different parts of the MSPA also guides the Court in determining the meaning of the term at issue. While subsection (1)(G) of the MSPA defines "termination" as a "substantial cessation," subsection (10) of the MSPA provides a separate and distinct definition for the "mass layoff" of employees. See 26 M.R.S.A. §§ 625-B(1)(G) & (10). Under the MSPA, a "mass layoff" occurs "[w]henever an employer lays off 100 or more employees at a covered institution," 26 M.R.S.A. § 625-B(10), and triggers a requirement that the employer report the "mass layoff" to the Director of the Maine Department of Labor within seven days.[2] Id.

The Legislature's deliberate choice to distinguish between "mass layoff" and "termination" or "substantial cessation" is instructive. See Aydelott v. City of Portland, 990 A.2d 1024, 1027 (Me. 2010) (stating that different language in various parts of an ordinance "suggests an intentional distinction"); Arsenault v. Sec'y of State, 905 A.2d 285, 289 (Me. 2006) ("If the Legislature had intended [a requirement], it knew how to say so directly as it did in [a comparable section]."); see also Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citation omitted); Tambone, 597 F.2d at 443 (stating that "[w]ord choices have consequences"). Had the Legislature intended a "mass layoff" to fall within the definition of "termination," it presumably would have done so. See Russello, 464

---

[2] Specifically, the MSPA states that following a mass layoff:

> [T]he employer within 7 days of such a layoff shall report to the director the expected duration of the layoff and whether it is of indefinite or definite duration. The director shall, from time to time, but no less frequently than every 30 days, require the employer to report such facts as the director considers relevant to a determination as to whether the layoff constitutes a termination or relocation under this section or whether there is a substantial reason to believe the affected employees will be recalled within a reasonable time.

6

U.S. at 23; Arsenault, 905 A.2d at 289. Instead, the MSPA triggers different requirements for a mass layoff and a termination – a mass layoff triggers a reporting requirement whereas a termination triggers a severance pay requirement.[3] See 26 M.R.S.A. §§ 625-B(1)(G) & (10).

Plaintiff additionally argues that the applicable Maine Department of Labor regulations could be read to define a "substantial cessation" of operations as including any situation in which the number of employees, hours worked or production at a covered facility declines by fifty percent from the same period one year earlier. The relevant Department of Labor regulations state:

> Determination of the Date of Termination or Relocation
>
> If the Director determines that a termination or relocation of a covered establishment has occurred or will occur, the Director shall determine the date of termination or relocation in accordance with this section.
>
> A. In doing so, the Director shall consider the following factors:
>
> 1. The date of the decision to close or relocate the establishment;
>
> 2. The date of any announcement to the employees that the establishment will be closed or relocated;
>
> 3. The point at which the number of employees employed at the establishment is less than 50% of the number of employees for the same time period one year earlier;
>
> 4. The point at which the number of hours worked at the establishment is less than 50% of the number of hours worked for the same time period one year earlier; and
>
> 5. The point at which any production or output measure is less than 50% compared to the production or output for the same time period one year earlier.

---

[3] The MSPA's legislative history also suggests that the MSPA provides from severance payments following a plant closure rather than large-scale layoffs at a plant where operations continue. See Shapiro Bros. Shoe Co. v. Lewiston-Auburn Shoeworkers Protective Ass'n., 320 A.2d 247, 254 (Me. 1974) ("The obvious intent of the Legislature in passing paragraphs two and three of the statute was to ameliorate the effects on a community when a large employer voluntarily goes out of business.").

B. The Director may, in addition to the foregoing, consider other factors particular or unique to the operation of the establishment that go to the date of termination or relocation.

C. No one factor is presumed to be controlling. In determining the date of termination or relocation, the complete operations of the establishment may be considered. If the director's determination of a covered establishment's date of termination or relocation is based primarily on the fact that the covered establishment has on that date reduced its number of employees, number of work hours or production to less than 50% of that of the same time period one year earlier, as described in factors 3, 4 and 5 of subsection A, the director's determination is a presumption that may be overcome by evidence that the covered establishment's operations did not substantially cease on that date.

170 C.M.R. Ch. 15 § II.

Plaintiff's reading of the regulations is simply incorrect. Rather than determining *whether* a termination – or a substantial cessation of operations – has occurred, the regulations assist the Director in determining *when* termination occurred and, therefore, which former employees are entitled to severance payments.[4] See 170 C.M.R. Ch. 15 §§ II, III. Both the title of the regulations – "Determination of the Date of Termination or Relocation" – and the language of the regulations are clear in this respect. The regulations instruct that "[i]f the Director determines that a termination or relocation of a covered establishment has occurred or will occur, the Director shall determine the date of termination or relocation" based on the five factors enumerated in subsection A. 170 C.M.R. Ch. 15 § II. As is clear from the language of the regulations, this determination is different than determining whether "termination" has occurred under subsection 2 of the MSPA.

---

[4] Presumably, the regulations are designed to address the fact that most facilities are wound down gradually, with employees laid off over a period of time, rather than all at once. By allowing the Director to set a certain date of termination that precedes the last day of operations, the regulations ensure that a larger percentage of employees affected by termination are awarded severance. See 170 C.M.R. Ch. 15 § I(C). The regulations thereby contemplate that employees laid off in the days and months leading up to the termination or relocation of a covered facility would be entitled to severance pay.

Plaintiff further argues that Section II(C) of the regulations instructs that a fifty percent reduction from a year earlier in employees, hours worked or production constitutes a substantial cessation of operations – the determination of which is an evidentiary issue subject to discovery. Plaintiff again misreads the regulations. Section II(C) states in pertinent part that where the director determines a date of termination or relocation based primarily on a reduction in the number of employees, hours worked or production to less than fifty percent of that of the same time period one year earlier, "the director's determination is a presumption that may be overcome by evidence that the covered establishment's operations did not substantially cease on that date." 170 C.M.R. Ch. 15 § II(C). Section II(C) – like the rest of Section II – applies when a termination occurs and does not support a finding that a fifty percent reduction is a termination under the MSPA. The evidentiary issue raised by Section II(C) is the issue of when termination occurred, not whether it occurred. The issue in this case, on the other hand, is not when termination occurred, but whether termination occurred.

To state a claim for relief under the MSPA for failure to pay severance, Plaintiff must plead sufficient facts to show that Formed Fiber substantially ceased operations at a covered establishment. Based on the plain meaning of the language of the MSPA, Plaintiff must plead sufficient facts to show that it is plausible that a stoppage of operations occurred at the covered establishment. Here, Plaintiff pled no facts concerning a stoppage of operations at the Auburn facility. Accordingly, the Court finds that Plaintiff has failed to state a claim under the MSPA for failure to pay severance.

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion to Dismiss (Docket # 8) is hereby GRANTED. Count II of Plaintiff's Complaint is hereby DISMISSED.

To the extent Plaintiff's Response includes an unsupported request that it be granted leave to file an amended complaint, the request is hereby DENIED as unsupported and futile.

SO ORDERED.

          /s/ George Z. Singal  
          United States District Judge

Dated this 7th day of September, 2011.