UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEVEN NELSON,                )
                              )
    Plaintiff            )
                              )
v.                            )    No. 2:10-cv-473-GZS
                              )
FORMED FIBER                  )
TECHNOLOGIES, LLC,            )
                              )
    Defendant            )

## *RECOMMENDED DECISION ON*
## *MOTION TO STRIKE JURY DEMAND*

Defendant Formed Fiber Technologies, LLC ("Formed Fiber") moves pursuant to Federal Rules of Civil Procedure 12(f) and 39(a)(2) to strike plaintiff Steven Nelson's jury demand with respect to his sole remaining claim, predicated on the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq*. *See* Motion To Strike Jury Demand ("Motion") (Docket No. 16) at 1; Class Action Complaint and Demand for Jury Trial (Docket No. 1) ¶¶ 23-40 (asserting claims pursuant to WARN Act (Count I) and Maine Severance Pay Act (Count II)); Order on Motion To Dismiss (Docket No. 13) at 9-10 (granting Formed Fiber's motion to dismiss Count II of complaint). For the reasons that follow, I recommend that the court grant the Motion.[1]

### I.  Applicable Legal Standards

Pursuant to Rule 12(f), the court, on its own or on motion by a party, may strike from a pleading, *inter alia*, any immaterial matter. *See* Fed. R. Civ. P. 12(f). Pursuant to Rule 39, when

---

[1] Because the instant motion is dispositive of the issue of the availability of a jury trial, I have issued a recommended decision rather than an order. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 68 n.2 (1st Cir. 2011) (describing as "problematic" the issuance by a magistrate judge of an order on a motion to quash a grand jury subpoena, "given the dispositive character of the motion.").

1

a jury trial has been demanded, trial on all issues must be by jury unless, *inter alia*, "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

A right to a federal jury trial may be conveyed by statute or by the Seventh Amendment to the U.S. Constitution. *See, e.g., Braunstein v. McCabe*, 571 F.3d 108, 116 (1st Cir. 2009); *see also* U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]"). For purposes of the Seventh Amendment, "[t]he right to a jury trial includes more than the common-law forms of action recognized in 1791; the phrase 'Suits at common law' refers to suits in which *legal* rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (citation and internal punctuation omitted) (emphasis in original).

Nelson does not dispute that the WARN Act conveys no statutory right to a jury trial and that, hence, the question presented is whether he has a Seventh Amendment right to a jury trial with respect to his claims pursuant to that act. *See* Opposition to Defendant's Motion To Strike Jury Demand ("Opposition") (Docket No. 23) at 2-3. Supreme Court caselaw establishes a three-part test of whether a Seventh Amendment right to a jury trial exists:

> First, the court must compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. The Seventh Amendment applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century.
>
> Second, the court must examine the remedy sought and determine whether it is legal or equitable in nature. This stage of the analysis is more important than the first stage.

Third, if the first two factors indicate a party has a jury trial right, the court must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Braunstein*, 571 F.3d at 118 (citations, internal quotation marks, and footnote omitted).

With respect to the first part of the test, Nelson does not dispute that there is no 18th century English law analogue to a WARN Act claim. *See* Opposition at 2-3; *see also, e.g., Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 841 (6th Cir. 2011) (finding no analogue between WARN Act claim and recognized 18th century English claims such as breach of contract, personal injury, and tort actions). The parties correctly deem the third part of the test irrelevant. *See* Motion at 2-3; Opposition at 2; Reply in Support of Motion To Strike Jury Demand ("Reply") (Docket No. 26) at 2 n.1. The narrow question presented, hence, is whether the remedy sought pursuant to the WARN Act is legal or equitable in nature.

## II. Discussion

### A. The WARN Act

The WARN Act "obligates certain employers to give workers or their union 60 days' notice before a plant closing or mass layoff." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 545-46 (1996). "If an employer fails to give the notice, the employees may sue for backpay for each day of the violation, and, in the alternative, the union is ostensibly authorized to sue on their behalf." *Id*. at 546.

The WARN Act provides, in relevant part:

Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for –

(A) back pay for each day of violation at a rate of compensation not less than the higher of –

>       (i)     the average regular rate received by such employee during the last 3 years of the employee's employment; or
>
>       (ii)    the final regular rate received by such employee; and
>
> (B)   benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.
>
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a)(1). The amount for which an employer is liable is reduced by certain sums paid to the employee, or on the employee's behalf, for the period of the violation. *See id*. § 2104(a)(2). "In addition, any liability incurred under paragraph (1) with respect to a defined benefit pension plan may be reduced by crediting the employee with service for all purposes under such a plan for the period of the violation." *Id*.

"If an employer which has violated this chapter proves to the satisfaction of the court that the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter the court may, in its discretion, reduce the amount of liability or penalty provided for in this section." *Id*. § 2104(a)(4). The remedy provided in section 2104 is the exclusive remedy for violation of the WARN Act. *See id*. § 2104(b). Under the WARN Act, a federal court "shall not have authority to enjoin a plant closing or mass layoff." *Id*.

### B. Caselaw on the Right to Jury Trial Pursuant to the WARN Act

Few courts have addressed whether the Seventh Amendment confers a right to a jury trial with respect to a WARN Act claim, and they have split on the issue. *See, e.g., Bledsoe*, 635 F.3d at 840 (citing cases). Formed Fiber relies on *Bledsoe*, the only United States Court of Appeals

case to have squarely considered the point, for the proposition that no jury trial right attaches with respect to a WARN Act claim. *See* Motion at 2-4; *Bledsoe*, 635 F.3d at 840-45. Nelson argues that *Bledsoe* was wrongly decided, relying on two earlier United States District Court cases holding to the contrary, *Bentley v. Arlee Home Fashions, Inc.*, 861 F. Supp. 65 (E.D. Ark. 1994), and *United Steelworkers of Am. v. Dietrich Indus., Inc.*, No. CV93-H-540-S, 1994 WL 661193, at *1 (N.D. Ala. June 29, 1994), as well as other caselaw that he contends supports the proposition that the remedy provided by the WARN Act is legal, not equitable, in nature. *See* Opposition at 3-9.

I conclude that, as Formed Fiber argues, *see* Reply at 1, *Bledsoe* is both higher and better authority than the authorities on which Nelson relies. The *Bledsoe* court held that the remedy provided by the WARN Act was equitable, rather than legal, in nature, on the basis that, although an action for money damages is "the traditional form of relief offered in the courts of law," money damages are characterized as "equitable" when, *inter alia*, they are "analogous to equitable restitutionary relief[.]" *Bledsoe*, 635 F.3d at 843 (citations and internal quotation marks omitted).

For several reasons, the court characterized the WARN Act's statutory remedy as providing such relief:

1. "First, the exclusive remedies are tailored to restoring the pay and benefits that the employer should have provided to its aggrieved employees during or in lieu of a 60-day notice period." *Id*. "This is restitutionary in nature, and is not compensation for discriminatory or otherwise wrongful termination or layoff." *Id*. "Significantly, no additional or alternative damages are provided for, and liability is limited to the number of days of violation and offset by other payments to or on behalf of the employee." *Id*.

5

2. "Second, . . . the WARN Act places the entire amount of the liability in the district court's discretion[,]" one of the bases on which the Supreme Court has characterized back pay available under Title VII of the Civil Rights Act of 1991 as an equitable remedy. *Id*. at 844. "This reinforces our view that the WARN Act remedies at issue are equitable in nature." *Id*.

3. "Finally, we are not persuaded that the WARN Act is akin to the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2617, which we recognized as providing a right to a jury trial on claims for damages in *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 643-45 (6th Cir. 1998)." *Id*. "In fact, we found a statutory right to a jury trial under the FMLA and did not reach the Seventh Amendment issue at all." *Id*.

This holding is well-reasoned and persuasive, and Nelson's challenges to it fall short.

### C. Plaintiff's Argument

#### 1. Whether WARN Act Monetary Remedy Is "Back Pay"

Nelson first assails *Bledsoe*'s characterization of the monetary remedy available under the WARN Act as either "restitution" or "back pay," relying on caselaw from the United States Courts of Appeals for the Second and Eighth Circuits stating that "the WARN claim is not a claim for backpay because it does not compensate for past services." Opposition at 3-4 (quoting *United Paperworkers Int'l Union v. Specialty Paperboard, Inc.*, 999 F.2d 51, 55 (2d Cir. 1993)) (citing *Aaron v. Brown Grp., Inc.*, 80 F.3d 1220, 1225 (8th Cir. 1996)); *see also id*. at 7-8 (citing *Aaron*, 80 F.3d at 1225-26; *Frymire v. Ampex Corp.*, 61 F.3d 757, 764 (10th Cir. 1995), and *North Star Steel Co. v. Thomas*, 515 U.S. 29, 37 (1995), for the proposition that damages under the WARN Act are most analogous to claims for breach of contract).

Nonetheless, as Formed Fiber rejoins, *see* Reply at 3, the WARN Act itself characterizes its monetary remedy as "back pay," 29 U.S.C. § 2104(a)(1)(A). In addition, as Formed Fiber observes, *see* Reply at 3, the cases on which Nelson relies analyze the WARN Act for purposes of borrowing an appropriate state statute of limitations, entailing an entirely different analysis than that pertaining to whether the WARN Act remedy properly is characterized as "equitable" or "legal," *see North Star*, 515 U.S. at 35-37; *Aaron*, 80 F.3d at 1223-27; *Frymire*, 61 F.3d at 763-64; *Paperworkers*, 999 F.2d at 52-57. Moreover, as the *Bledsoe* court noted in rejecting the application of this line of cases to the Seventh Amendment question, the Supreme Court in *North Star* did not identify which state law statute of limitations would be most appropriate for a WARN Act claim; it merely held that the limitations period for WARN Act claims should be borrowed from state, not federal, law. *See Bledsoe*, 635 F.3d at 842 n.7; *North Star*, 515 U.S. at 35-37.

### 2. Equitable v. Legal Back Pay

Nelson next argues that, even assuming *arguendo* that the WARN Act properly is characterized as conferring back pay, back pay can be either equitable or legal, a nuance that, he contends, both Formed Fiber and the *Bledsoe* court fail to appreciate. *See* Opposition at 4-5, 8-9; *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-15 (2002) (observing that actions for restitution can be either legal, in circumstances in which a plaintiff cannot "assert title or right to possession of particular property," or equitable, in circumstances in which "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession") (footnote omitted).

Nelson contends that the *Bentley* court got it right when it concluded that the WARN Act provided a legal remedy, namely, damages to compensate for a plaintiff's loss, rather than an

7

equitable remedy of restitution, the purpose of which is to deprive a defendant of his unjust gain, something that a WARN Act employer does not reap when it fails to comply with the act's 60-day notice provision. *See* Opposition at 5, 7; *Bentley*, 861 F. Supp. at 68; *accord Dietrich*, 1994 WL 661193, at *1.

Formed Fiber correctly rejoins that the *Bledsoe* court indeed appreciated that back pay *can* be characterized as a legal remedy. *See* Reply at 4. The *Bledsoe* court distinguished claims for back pay pursuant to the WARN Act from claims for back pay for breach of the duty of fair representation pursuant to section 301 of the Labor Management Relations Act ("LMRA"), which the Supreme Court had characterized as legal in nature, on the ground that LMRA back pay does not represent money wrongfully withheld by a union (restored by way of equitable restitution) but, rather, wages and benefits that would have been received if the union had processed the grievances properly (compensatory damages). *See Bledsoe*, 635 F.3d at 843; *see also Terry*, 494 U.S. at 570-71 ("[W]e have characterized damages as equitable where they are restitutionary, such as in actions for disgorgement of improper profits. The backpay sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from McLean had the Union processed the employees' grievances properly. Such relief is not restitutionary.") (citations and internal punctuation omitted).[2]

---

[2] Nelson makes the related argument that "juries traditionally have been called upon to compute lost wages or back pay as a measure of legal damage in many common law actions involving employment relationships and otherwise[,]" a proposition for which he cites three Missouri state court cases. Opposition at 8-9. The fact that juries sometimes compute back pay does not render it "legal," rather than "equitable," in nature. The First Circuit has clarified that, despite the "equitable nature" of back pay, juries in this circuit "are generally entrusted with decisions on back pay when the jurors are already resolving issues of liability and compensatory damages." *Johnson v. Spencer Press of Me., Inc*., 364 F.3d 368, 379-80 (1st Cir. 2004) (footnote omitted). "However, where only reinstatement and back pay are requested or if they are the only issues, in addition to liability, remaining in the case then both reinstatement and back pay shall be for the court." *Id*. at 380 n.7 (citation and internal punctuation omitted). The sole remedy conveyed by the WARN Act is back pay/benefits. *See* 29 U.S.C. § 2104; *In re Protected Vehicles, Inc*., 392 B.R. 633, 638 (Bankr. D.S.C. 2008) ("Under no set of facts is an employee suing under the WARN Act entitled to any form of relief other than back pay and lost benefits (and fees as a part of overall costs).").

*Bentley* and *Dietrich* do not undercut the persuasive force of *Bledsoe*. In *Bentley*, the court reasoned:

> The main purpose of a damages award is some type of compensation for Plaintiff's loss – contrasted with restitution where the purpose is to deprive the defendant of his unjust gain. The WARN Act compensates the former employees for damages caused through the employer's failure to provide the requisite notice of intentions to close the plant or layoff a large amount of employees. The employer has not obtained any gain by its failure to comply with the Act. Thus, the remedy under the Act appears to be legal in nature.

*Bentley*, 861 F. Supp. at 68 (citations omitted). *Accord Dietrich*, 1994 WL 661193, at *1.

However, an employer does reap what is, in effect, an unjust gain when it fails to provide qualifying employees the wages and benefits due pursuant to the WARN Act. In suing to recoup those withheld wages and/or benefits, an employee, in effect, seeks restitution of those particular things. In this respect, as Formed Fiber argues, *see* Reply at 5, *Bentley* and *Dietrich* overlook the fact that the WARN Act remedy is designed to restore the *status quo*, a trademark indicium of equitable relief, *see, e.g., Braunstein*, 571 F.3d at 122 (observing that the Supreme Court has "distinguished between actions involving remedies, such as restitution or disgorgement of improper profits, which are limited to restoring the status quo and ordering the return of that which rightfully belongs to the plaintiff, from those intended to punish the defendant. The former are equitable claims, for which a jury right does not attach, while the latter are legal.") (citations and internal quotation marks omitted). *See also Protected Vehicles,* 392 B.R. at 638 (deeming WARN Act remedy equitable in nature on basis, *inter alia*, that "what the Plaintiffs herein are seeking is not compensation for the damages flowing from their discharge, but a reimbursement of those salaries and benefits, calculated on a per diem basis, which were due to

9

them on the date they were laid off, in lieu of Emery's having given them proper notice of their layoffs, and which have to this point in time been wrongly withheld from them.").[3]

### 3. Significance of Conferring of Judicial Discretion

Nelson next challenges the *Bledsoe* court's analogy between the WARN Act remedy and the back pay remedy pursuant to Title VII, asserting that (i) this is not a case in which back pay is specifically included with other equitable relief, and (ii) the conferring of judicial discretion does not necessarily distinguish a legal claim from an equitable one. *See* Opposition at 5-6. The first point is not at issue: the WARN Act does not provide for any relief apart from the provision of back pay/benefits, *see* 29 U.S.C. § 2104, and the *Bledsoe* court did not find otherwise, *see Bledsoe*, 635 F.3d at 844.

With respect to the second point, Nelson argues that the existence of discretion in awarding damages does not necessarily make a remedy equitable; for instance, juries have discretion in awarding punitive damages. *See* Opposition at 6. Nonetheless, the *Bledsoe* court correctly deemed this feature of the WARN Act characteristic of an equitable remedy, *see Bledsoe*, 635 F.3d at 844, noting that Justice Rehnquist had observed in a concurring opinion in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975): "To the extent . . . that the District Court retains substantial discretion as to whether or not to award backpay notwithstanding a finding of discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our

---

[3] Nelson also points out that at least two United States Courts of Appeals have affirmed jury verdicts in WARN Act cases. *See* Opposition at 7 (citing *Local Union No. 1992 of IBEW v. Okonite Co.*, 358 F.3d 278 (3d Cir. 2004); *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000)). He contends that, while neither court addressed the issue of whether the WARN Act allows for a jury trial, the fact that both cases were tried to a jury is instructive. *See id.* The same argument was made to the *Bledsoe* court, which properly gave it short shrift on the basis that these courts never considered the question of whether a jury trial is available in a WARN Act case. *See Bledsoe*, 635 F.3d at 840 n.5.

cases neither party may demand a jury trial[,]" *Albemarle*, 422 U.S. at 443 (Rehnquist, J., concurring).[4]

### III. Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED**, and that Nelson's jury demand be **STRICKEN** from his complaint.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 13th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] Nelson points out that, in *Frizzell*, the United States Court of Appeals for the Sixth Circuit held that there is a right to a jury trial in Family and Medical Leave Act ("FMLA") cases even though the FMLA allows a court to reduce the amount of liquidated damages upon proof to the satisfaction of the court that the employer acted in good faith. *See* Opposition at 6, 8. In so arguing, Nelson overlooks the fact that the *Bledsoe* court itself distinguished *Frizzell*, explaining that, in *Frizzell*, it found a statutory right to a jury trial and, hence, did not need to reach the Seventh Amendment issue, and that the FMLA confers discretion to reduce an employer's liability only as to liquidated damages, not as to all possible liability under that act. *See Bledsoe*, 635 F.3d at 844-45. Nelson adds that courts have found a right to a jury trial with respect to other remedial schemes similar to the WARN Act, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq. See* Opposition at 8 (citing *Frizzell* with respect to the FLSA and *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir. 1971), and *Martin v. Detroit Marine Terminals, Inc.*, 189 F. Supp. 579 (E.D. Mich. 1960), with respect to the Portal-to-Portal Act). *Frizzell* merely notes that "courts have uniformly interpreted the remedial provisions of the FLSA to provide a right to a jury trial." *Frizzell*, 154 F.3d at 644 (citations and internal punctuation omitted). The *Frizzell* court had no occasion to plumb the reasons why, *see id.*, and Nelson does not otherwise explain why he believes that the remedial provisions of the FLSA are sufficiently similar to those of the WARN Act to merit parallel treatment. *See* Opposition at 8. *Martin* does not help Nelson, the court having held that, pursuant to the Portal-to-Portal Act, Congress's arrogation to the court and not to the jury of discretion to reduce the amount of liquidated damages available to a plaintiff did not offend the Seventh Amendment. *See Martin*, 189 F. Supp. at 580, 583. The court in *McClanahan* simply considered whether, following the return of a jury verdict in favor of the plaintiffs on their FLSA claims, the district court had properly exercised its discretion pursuant to the Portal-to-Portal Act to deny liquidated damages. *See McClanahan*, 440 F.2d at 322-24.