UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEVEN NELSON, on behalf of himself )
and all others similarly situated, )
 )
         Plaintiff, )
 ) Docket No. 2:10-cv-00473-GZS
v. )
 )
FORMED FIBER TECHNOLOGIES, )
INC., )
 )
         Defendant.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Docket # 40). As explained herein, after reviewing all relevant filings, including the Joint Stipulation (Docket # 38), Plaintiff's Statement of Additional Material Facts (Docket # 56) and supporting affidavits, and Defendant's Reply Statement of Material Facts (Docket # 69) and supporting affidavits, the Court GRANTS the Motion.

I. **LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. See Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

Where a party alleges that an inadequate opportunity for discovery prevents it from mounting an opposition, Fed. R. Civ. P. 56(d)[1] "offers a safeguard against judges swinging the summary judgment axe too hastily." BlueTarp Financial, Inc. v. Eastern Materials Corp., 592 F. Supp. 2d 188, 189 (D. Me. 2009) (quoting Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994)). Specifically, summary judgment may be deferred or denied if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Because district courts "construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter," the First Circuit requires substantial, not perfect, compliance. BlueTarp Financial, 592 F. Supp. 2d at 189 (quoting Resolution Trust Corp., 22 F.3d at 1203). A litigant who invokes Rule 56(d) must make an authoritative and timely proffer showing:

> (i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion.

Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10 (1st Cir. 2007) (internal citations omitted).

II.  **FACTUAL BACKGROUND**

Pursuant to Local Rule 56(g), for the purpose of determining whether summary judgment is appropriate, the parties have stipulated to several facts material to Defendant's Motion. (See Joint Stip. ¶¶ 1-11.) Defendant Formed Fiber Technologies, LLC ("Formed Fiber")

---

[1] Under the 2010 Amendments to the Federal Rules of Civil Procedure, Rule 56(d) carries forward without substantial change the provisions of former Rule 56(f).

[2] Nelson contends that because "voluntary departure" is discussed in § 2101(a)(6)(A), which is related to termination of employees, rather than § 2101(a)(6)(B), which is related to layoffs exceeding six months, the fact that an employee resigns his employment after receiving notice of a mass layoff does not render the employee ineligible to bring suit under the WARN Act. This reading of the statute is nonsensical and would produce an illogical result.

3

manufactures automobile parts at its plant in Auburn, Maine. In 1976, Formed Fiber hired Plaintiff Steven Nelson and, in the fall of 2008, Formed Fiber employed Nelson as a full time employee in its maintenance department. On or about December 15, 2008, Formed Fiber laid off approximately 162 out of 300 employees at its Auburn plant, including Nelson. Roughly one month later, on or about January 12, 2009, Formed Fiber recalled Nelson and several other employees. Nelson and the other employees' tenure was short lived, however, and on January 23, 2009 they were laid off again.

Shortly thereafter, on February 11, 2009, Formed Fiber sent Nelson and the approximately 162 other laid off employees a letter stating that although Formed Fiber had initially believed that the layoffs would be temporary, "changed business forecasts", "unforeseen circumstances", and "sharp declines in automobile sales" had changed Formed Fiber's expectations such that "many of the December and January temporary layoffs may, in fact, extend beyond six months." (See Docket # 38-1.) Formed Fiber's letter also provided "notice under the Worker Adjustment and Retraining Notification ('WARN') Act of the possibility that the … layoffs will exceed six months …, resulting in a 'mass layoff.' As a potential affected employee, you are provided this notice pursuant to the WARN Act…." (See id.) On a brighter note, the letter stated that "it remains our hope that these layoffs will be temporary and that laid off employees will be brought back to work." Also on February 11, 2009, "pursuant to the [WARN] Act," Formed Fiber sent a letter to the Maine Department of Labor, which provided "notice under the [WARN] Act of the possibility that the December and January layoffs will exceed six months in duration, resulting in a mass layoff." (See Docket # 38-2.)

Construing the facts as favorably to the nonmoving party as the record will permit, and drawing reasonable inferences from the materials in Nelson's favor, the Court finds the

following additional facts for the purpose of deciding this summary judgment motion. (See Plaintiff's Statement of Additional Material Facts (hereinafter "PSAMF") & Defendant's Reply Statement of Material Facts (hereinafter, "Reply Stmt.").) After being laid off, Nelson applied for unemployment benefits. Nelson believed that as a condition of receiving unemployment benefits he was required to look for work on a periodic basis. He also believed that if he refused suitable work which was offered to him, he would forfeit his right to unemployment benefits. Nelson attempted to speak with Formed Fiber Human Resources personnel about the likelihood of his recall, but Nelson's attempts were unsuccessful, which gave Nelson the impression that he was not going to be recalled to work at Formed Fiber. Accordingly, in the spring of 2009, Nelson secured and accepted a job with Chapman Trucking that paid him approximately $7.00 per hour less than his job at Formed Fiber.

Despite declines in automobile sales and changed business forecasts, approximately forty Formed Fiber employees who had been laid off in December or January returned to work within six months; Nelson was not one of those employees. On May 7, 2009, after obtaining the job with Chapman Trucking, Nelson met with Formed Fiber Human Resources Manager Chris Casey and notified Casey that he would be resigning because he had found another job. (See Voluntary Separation Form (Docket # 38-3) & PSAMF ¶¶ 16, 18.) Nelson asked Casey whether or not his recall was imminent or whether he would be recalled at all. Based on Casey's response, or lack thereof, Nelson believed there was no likelihood that he would be recalled by Formed Fiber.

Nelson also asked Casey about obtaining the balance of his 401(k) plan. During this meeting, Casey provided Nelson with several documents, including a Voluntary Separation Form (see Docket # 38-3), Formed Fiber's 401(k) Plan Participant Distribution Election Form (see

5

Docket # 57-1), and W-4 and W-4ME tax forms (see Docket #s 57-2 & 57-3). The Voluntary Separation Form, which Nelson filled out, signed, and provided to Casey, is a one-page document with minimal text that is provided in clear, capitalized font and states – directly above Nelson's signature – "MY RESIGNATION IS VOLUNTARY AND IS NOT A FORCED LEAVING." Nelson filled out these forms without reading them, because he believed he needed to do so in order to obtain the proceeds of his 401(k) plan. The record also reflects that Nelson rolled over his entire 401(k) balance directly into an IRA (see Formed Fiber's 401(k) Plan Participant Distribution Election Form & Formed Fiber's 401(k) Plan Notice to Distribute Participant's Accrued Benefits (Docket # 71-6)) and that the effect of filling out the W-4 and W-4ME tax forms was to reduce tax withholdings from Nelson's final Formed Fiber paycheck.

In addition, Nelson's new employer, Chapman Trucking, sent Formed Fiber a document entitled Request for Information from a Previous Employer, which requested information concerning Nelson's job performance at Formed Fiber. (See Docket # 38-4.) The Request for Information, which had been signed by Nelson, was completed by Formed Fiber's Human Resources Manager and stated that Nelson had "resigned" from Formed Fiber but that he was "eligible for rehire." (See id.)

Pursuant to these facts, but viewing them in the light most favorable to Nelson and drawing all reasonable inferences in Nelson's favor, the Court finds that Nelson resigned from Formed Fiber less than six months after being laid off, regardless of whether Nelson was laid off on December 15, 2008 or January 23, 2009.

On November 18, 2010, Nelson filed a Complaint against Formed Fiber alleging (1) that Formed Fiber had failed to give the requisite 60 days' advance notice of its "mass layoff" as required by the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §

2101 et seq. and (2) that Formed Fiber failed to pay severance pay to terminated employees as required by the Maine Severance Pay Act ("MSPA"), 26 M.R.S.A. § 626-B. In an Order dated September 7, 2011, the Court dismissed Nelson's MSPA claim. (See Order on Motion to Dismiss (Docket # 13).)

## III. DISCUSSION

Formed Fiber contends that there are no issues of material fact and that it is entitled to summary judgment because Nelson cannot establish the necessary elements of a claim for relief under the WARN Act. Specifically, Formed Fiber argues that Nelson's layoff lasted less than six months due to his resignation from Formed Fiber and therefore that Nelson did not experience an "employment loss" as required for relief under the WARN Act.

Nelson opposes grant of summary judgment on multiple bases. First, Nelson argues that his proposed amended complaint includes a second named plaintiff who was laid off at the same time as Nelson but who did not resign before the six month notification period began and therefore does not raise the same standing issues as Nelson. Second, Nelson argues that even if he did resign within six months of being laid off, he is entitled to relief under the language of the WARN Act. Third, Nelson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether Nelson actually resigned from Formed Fiber. Finally, invoking Fed. R. Civ. P. 56(d), Nelson argues that even if the Court finds there to be no dispute as to whether Nelson resigned, the Court should defer ruling on the instant motion and permit Nelson to conduct limited discovery that "could lead" to evidence that Nelson's resignation was coerced, involuntary, and/or immaterial. (See Plaintiff's Opposition to Formed Fiber's Motion for Summary Judgment (Docket # 55) at PageID # 255.)

7

### A. Plaintiff's Motion for Leave to Amend

By way of a separate order, the Court is simultaneously granting Plaintiff's Motion to Amend the Complaint to add an additional plaintiff, Paul Applegate. In opposing summary judgment, Plaintiff Nelson argues that this amendment provides a basis for denying summary judgment. This argument is without merit. To the extent that Defendant's Motion for Summary Judgment establishes an absence of trialworthy evidence to support a WARN Act claim by Plaintiff Nelson, Defendant is entitled to summary judgment on that claim. Such a finding would simply allow Plaintiff Applegate to remain as the sole plaintiff. Accordingly, the Court will not deny summary judgment as to Nelson's claim based on a separate plaintiff whose claims are supported by separate underlying facts.

### B. "Employment Loss" Under the WARN Act

The WARN Act requires that an employer give sixty days' notice to all affected employees before ordering a mass layoff. 29 U.S.C. § 2102(a). An affected employee is an employee who "may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." § 2101(a)(5). For the purposes of this case, the WARN Act defines "employment loss" as either "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, [or] (B) a layoff exceeding 6 months…." § 2101(a)(6). Under the WARN Act, "[a]ny employer who orders a plant closing or mass layoff [without providing the requisite notice to affected employees] shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff…." § 2104(a)(1).

According to Congress, the purpose of the WARN Act is "to provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain

alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." Foster v. K-V Pharmaceutical Co., No. 4:09-cv-408-DDN, 2010 WL 979445, at *5 (E. D. Mo. Mar. 12, 2010) (quoting Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (quoting 20 C.F.R. § 639.1)). Because of this purpose, "[e]mployees who choose early retirement or who are rehired within six months of a layoff do not fall within the WARN Act's purpose because there is no need for retraining or alternative jobs." Id. (citing Rifkin, 78 F.3d at 1282-83; Kephart v. Data Sys. Int'l, Inc., 243 F. Supp. 2d 1205, 1224-25 (D. Kan. 2003)).

Formed Fiber argues that the WARN Act clearly states that a layoff must last more than six months to qualify as an employment loss and because Nelson resigned his employment after experiencing a layoff lasting less than six months, he did not suffer an employment loss. Nelson suggests that he suffered an employment loss because he reasonably expected his layoff to last more than six months. Nelson also suggests that his resignation does not render him ineligible to recover under the WARN Act because the term "voluntary departure" is only relevant to termination of employees and not, as here, where the employer engages in a layoff.

Under the plain language of the WARN Act, a layoff exceeding six months constitutes an employment loss. See Foster, 2010 WL 979445, at *7 (citing 29 U.S.C. § 2101(a)(6)(B)). Nelson was laid off on December 15, 2008, rehired on January 12, 2009, and laid off again on January 23, 2009. On May 7, 2009, Nelson provided Formed Fiber with notice that he had resigned from Formed Fiber in order to accept employment with another company. Regardless of whether Nelson was laid off in December 2008 or January 2009, the Court finds that he resigned from his position at Formed Fiber "before his layoff reached the six-month threshold" and therefore "before he suffered an employment loss within the meaning of the statute." Id.; see

9

also Rifkin, 78 F.3d at 1282 (holding that employees laid off for less than six months did not suffer an "employment loss" although the employees expected the layoffs to be permanent); United Paperworkers Int'l Union v. Specialty Paperboard, Inc., 999 F.2d 51, 52 (2d Cir. 1993) ("While a termination immediately qualifies as an employment loss, 29 U.S.C. § 2101(a)(6)(A), a layoff must last more than six months to qualify. 29 U.S.C. § 2101(a)(6)(B)."); Castro v. Chicago Housing Authority, No. 99-C-6910, 2003 WL 21518321, at *11 (N.D. Ill. July 1, 2003), aff'd, 360 F.3d 721 (7th Cir. 2004) (holding that employee who resigned less than six months after his layoff date was not entitled to relief under WARN because he had not suffered an "employment loss"); Michigan Regional Council of Carpenters v. Holcroft LLC, 195 F. Supp. 2d 908, 912 (E.D. Mich. 2002) ("only layoffs *exceeding* 6 months are considered employment losses" for the purposes of WARN Act claims) (emphasis in original); Oil, Chemical & Atomic Workers Int'l Union v. Am. Home Prods. Corp., 790 F. Supp. 1441, 1447-48 (N.D. Ind. 1992).

Nelson argues that he experienced an "employment loss" because at the time of his resignation he reasonably expected that his layoff would exceed six months. Numerous courts have rejected this argument – an attempt to transform an objective test based on the six month statutory period into a subjective test based upon the plaintiff's expectations – and the Court rejects this argument here as well. See Rifkin, 78 F.3d at 1282 ("A common sense reading of the statute indicates it is the actuality of the termination which controls and not the expectations of the employee."); Graphic Commc'ns Int'l Union v. Quebecor Printing (USA) Corp., 252 F.3d 296, 299-300 (4th Cir. 2001); Foster, 2010 WL 979445, at *6 (stating that "the employee's own beliefs and expectations do not determine whether an employment loss has occurred"); Smith v. Consolidation Coal Co., 948 F. Supp. 583, 586 (W.D. Va. 1996).

The Court also rejects Nelson's suggestion that a layoff continues beyond an employee's voluntary departure or resignation date, because such a finding would produce an "illogical result." Foster, 2010 WL 979445, at *7. Citing the fact that the WARN Act discusses voluntary departure only in the context of termination, Nelson argues that his resignation within six months of being laid off is irrelevant to the issue of whether he experienced an "employment loss."[2] Essentially, Nelson is suggesting that an employee placed on a layoff of indefinite duration continues to experience a layoff, and therefore an "employment loss" under subsection (B), even after he resigns his position, because subsection (B) of the definition of employment loss does not reference voluntary termination.

The Court rejects this reasoning. "Any suggestion that a layoff continues beyond an employee's voluntary departure date would produce illogical results" because it would "force employers to hypothesize about every departed employee's future recall status, and would allow departed employees to collect WARN Act payments despite being employed or retired." Id. Moreover, Nelson's suggestion would conflict with the stated purpose of the WARN Act. Id. Quite simply, workers experiencing a layoff who voluntarily leave their job for another job do not need the protections provided by the Act. Id. (citing Rifkin, 78 F.3d at 1282-83).

**C. Issues of Material Fact**

Nelson also contends that summary judgment is not appropriate here because a genuine issue of material fact exists as to whether he actually resigned. In fact, Nelson admits that he signed a Voluntary Separation Form on May 7, 2009 stating that he resigned from Formed Fiber in order to take another job. Nelson also admits he signed this form in connection with taking a

---

[2] Nelson contends that because "voluntary departure" is discussed in § 2101(a)(6)(A), which is related to termination of employees, rather than § 2101(a)(6)(B), which is related to layoffs exceeding six months, the fact that an employee resigns his employment after receiving notice of a mass layoff does not render the employee ineligible to bring suit under the WARN Act. This reading of the statute is nonsensical and would produce an illogical result.

11

lower paying position at Chapman Trucking. Despite these clear admissions, Nelson attempts to create a genuine issue of material fact regarding his May 7, 2009 resignation. First, Nelson argues that the tax forms he filled out on May 7, 2009 suggest that he did not actually resign, because if he had in fact resigned there would be no reason to fill out new W-4 and W-4ME forms and Formed Fiber would not have asked him to fill out the forms. (See PSAMF ¶ 12 & Nelson Decl. (Docket # 57) ¶ 8.) The Court finds that Nelson's argument concerning the W-4 and W-4ME forms is conjectural, unsupported, and insufficient to establish a genuine issue of material fact. See Burrell v. Anderson, 353 F. Supp. 2d 55, 59 (D. Me. 2005) ("the court will discount any statement of material fact or a response containing irrelevant argument or factual assertions unsupported by appropriate record citation"). Moreover, the Court agrees with Defendant that Nelson filled out the W-4 and W-4ME tax forms in conjunction with his separation from Formed Fiber – namely, to reduce withholdings from his final paycheck.

Nelson next suggests that he only signed the Voluntary Separation Form in order to obtain the balance of this 401(k) Fund. Even if this was the motivation for signing this particular form, the fact remains that the record does not create a genuine issue of fact as to Nelson's actual resignation on May 7, 2009 to take another position at Chapman Trucking. Finally, Nelson argues that he was prompted to resign Formed Fire based on his belief that he would forfeit his right to unemployment benefits if he refused the Chapman Trucking position.

Assuming that a trier of fact believed some or all of Nelson's assertions regarding what motivated his actions on May 7, 2009, these assertions do not give rise to a material dispute. Ultimately, Nelson admits that he resigned his job at Formed Fiber and took a job with Chapman Trucking. (See PSAMF ¶¶ 16, 18 (stating repeatedly that Nelson "resigned" his job at Formed Fiber).) Whether Nelson signed the Voluntary Separation Form because he believed that doing

so was necessary to retrieve the proceeds of his 401(k) account is immaterial to determining whether Nelson in fact resigned from Formed Fiber. Nelson admits that he inquired about obtaining the balance of his 401(k) plan *after* obtaining the job with Chapman Trucking. (See id. ¶ 9.) Moreover, Nelson accepted the job with Chapman Trucking because he believed that searching for work and accepting a job offer were required as a condition of his receipt of unemployment benefits. (See id. ¶¶ 5-6.) While Nelson may not have wanted to "resign[] his job with Formed Fiber to take a job for $7.00 an hour less," id. ¶ 16, the Court finds that Nelson voluntarily resigned his employment with Formed Fiber and took a job with Chapman Trucking. Nelson's allegation that he took the job with Chapman Trucking because he was concerned about losing unemployment benefits does not render Nelson's resignation involuntary. See Colburn v. Parker Hannifin/Nichols Portland Div., 355 F. Supp. 2d 566, 573 n.3 (D. Me. 2005) ("conclusory statement of the plaintiff's belief is not evidence that can create a dispute").[3]

Accordingly, the Court concludes that no genuine issue of material fact exists as to whether Nelson resigned from his employment with Formed Fiber less than six months after being laid off. While there may be a genuine dispute between the parties as to what motivated Nelson's resignation, his motivation and reasons for resigning are immaterial in this case based on the record before the Court construed in the light most favorable to Nelson. Based on the record before the Court, it is clear that Nelson resigned from Formed Fiber less than six months after being laid off and therefore he cannot satisfy the elements necessary to set forth a claim under the WARN Act.[4]

---

[3] The court also rejects Nelson's unsupported claim that a material dispute of fact exists as to whether Nelson knowingly relinquished his claim for pay under the WARN Act. Whether Nelson knowingly relinquished a WARN Act claim simply is not an issue in this case.

[4] Nelson also alleges that there is a material question of fact as to whether, even if he did resign, he would have been recalled by Formed Fiber. Whether or not Nelson would have been recalled had he chosen not to resign on May 7, 2009 is irrelevant to determining whether Nelson experienced an "employment loss." See Foster, 2010 WL 979445,

### D. Plaintiff's Request for Limited Discovery

Finally, Nelson requests under Fed. R. Civ. P. 56(d) that the Court defer ruling on summary judgment so that Nelson can conduct limited discovery on issues raised by Formed Fiber's summary judgment motion. In particular, Nelson seeks discovery concerning the names of individuals who were laid off and those who were recalled, as well as Formed Fiber's communications with laid off employees. However, Nelson fails to explain how such discovery is related to Nelson's inability to set forth the necessary elements of a WARN Act claim. In addition, Nelson seeks discovery concerning his Formed Fiber 401(k) plan, whether it permits hardship withdrawals, what Casey understood about the plan, and the substance of Casey's meeting with Nelson on or about May 7, 2009. As stated previously, Nelson's argument that he may have been coerced into signing the Voluntary Separation Form in order to obtain disbursal of his 401(k) account is tangential to the issue of whether Nelson resigned voluntarily, is based on conjecture, and rests on improbable inferences and unsupported allegations. See Burrell, 353 F. Supp. 2d at 59. Furthermore, the Court finds that Nelson has failed to articulate "a plausible basis for believing that additional facts probably exist" and he has failed to provide a reasonable "explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion." Rivera-Torres, 502 F.3d at 10. In short, Nelson has failed to "demonstrate a realistic prospect that further discovery would disclose evidence sufficient to defeat the motion for summary judgment." Mattoon v. City of Pittsfield, 980 F.2d 1, 8 (1st Cir. 1992). Accordingly, the Court DENIES Plaintiff's request for limited discovery pursuant to Rule 56(d).

---

at *7 (stating that the WARN Act does not "force employers to hypothesize about every departed employee's future recall status" and does not "allow departed employees to collect WARN Act payments despite being employed [elsewhere]").

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Motion for Summary Judgment (Docket # 40) is hereby GRANTED.

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 13th day of April, 2012.