UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL APPLEGATE, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORMED FIBER TECHNOLOGIES, LLC, )<br>)<br>Defendant. ) | Docket No. 2:10-cv-00473-GZS |

**ORDER ON MOTION TO CERTIFY CLASS AND FOR CLASS NOTICE**

Plaintiff Paul Applegate ("Plaintiff" or "Applegate") brings this action on behalf of himself and other former employees of Formed Fiber Technologies, LLC ("Defendant" or "Formed Fiber) who allegedly were subjected to a "mass layoff," as that term is defined by the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101(a)(3). Applegate asserts that Formed Fiber violated the WARN Act by failing to provide sixty days' advance written notice of a mass layoff and therefore that he and others similarly situated are entitled to relief under the WARN Act.

Before the Court is Plaintiff's Motion to Certify Class and for Class Notice (ECF No. 85). As explained herein, the Court GRANTS the Motion.

I.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 sets forth the prerequisites for certifying any class. Generally, Rule 23(a) requires any class to have (1) numerosity, (2) commonality, (3) typicality,

and (4) an adequate class representative. See Campbell v. First American Title Ins. Co., 269 F.R.D. 68, 70-71 (D. Me. 2010) (citing Smilow v. Southwestern Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003)). In addition to these four requirements, the proposed class must satisfy at least one of the subdivisions of Rule 23(b), which determines what type of class can be maintained. To certify a class under Rule 23(b)(3), as Plaintiff attempts here, the Court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" ("predominance"), and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008) (quoting Fed. R. Civ. P. 23(b)(3)). For classes certified under Rule 23(b)(3), the Rules "invite[ ] a close look at the case before it is accepted as a class action." Id. at 18-19 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal citation omitted)).

It is Plaintiff's burden to establish a basis for certification. As the Supreme Court has instructed, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S.Ct. 2541, 2551 (2011) (emphasis in original). Moreover, the Court must undertake "a rigorous analysis" of the prerequisites established by Rule 23. Id. See also Campbell, 269 F.R.D. at 71 (quoting Smilow, 323 F.3d at 38). Nonetheless, at the class certification stage any inquiry into the merits is limited "to the extent that the merits overlap the Rule 23 criteria." Campbell, 269 F.R.D. at 71 (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d at 24). However, "when a Rule 23 requirement relies on a novel or complex theory as to injury, ... the district court must engage in a searching inquiry into the viability of that theory and the

existence of the facts necessary for that theory to succeed." Id. (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d at 26).

Although the rule contemplates that the district court must decide whether to certify any case as a class action "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), "[c]ourts may alter certification orders prior to final judgment." See Brown v. Colegio de Abogados, 613 F.3d 44, 46 (1st Cir. 2010) (citing Fed. R. Civ. P. 23(c)(1)(C)).

## II. FACTUAL BACKGROUND

The Court's earlier Orders set forth the factual and procedural background of this case in detail; therefore, the Court need not recount the entire background of the case here. (See Nelson v. Formed Fiber Techs., LLC, --- F. Supp. 2d ---, 2012 WL 1247236 (D. Me. Apr. 13, 2012) (Order on Motion for Leave to File Amended Class Action Complaint, ECF No. 79); Nelson v. Formed Fiber Techs., LLC, --- F. Supp. 2d ----, 2012 WL 1247260 (D. Me. Apr. 13, 2012) (Order on Motion for Summary Judgment, ECF No. 80)). Rather, the Court recounts only the facts relevant to the instant Motion.[1]

In December 2008, Formed Fiber laid off a number of employees at its manufacturing facility for automobile parts in Auburn, Maine. Based on its expectations at that time, Formed Fiber announced that the layoffs would be temporary. (See Letter to Associates, First Amended Class Action Complaint, Exhibit 1 (ECF No. 84).) In January 2009, Formed Fiber recalled a subset of those laid off employees; however, many of the recalled employees were laid off shortly thereafter. Then, in a letter dated February 11, 2009, Formed Fiber announced that because of "changed business forecasts and unforeseen circumstances" Formed Fibers'

---

[1] As the Court has noted previously, it "is not required to make 'findings' in connection with class certification and, in light of the limited class discovery, any facts laid out in this Order are necessarily preliminary and subject to 'revisiting.'" Campbell, 269 F.R.D. at 71 n.1.

3

expectations had changed and "many of the December 2008 and January 2009 temporary layoffs may, in fact, exceed six months." (Id.) Accordingly, Formed Fiber's February 11th announcement notified potentially affected employees that the company "is hereby giving notice under the Worker Adjustment and Retraining Notification ("WARN") Act of the possibility that the December and January layoffs will exceed six months in duration, resulting in a mass layoff." (Id.) The announcement further informed each recipient that as "a potential affected employee, you are provided this notice pursuant to the WARN Act, 29 U.S.C. § 2102(c)." (Id.)

One Formed Fiber employee who received the February 11th announcement was Plaintiff Paul Applegate. Applegate was laid off on December 18, 2008 after approximately twenty-five years at Formed Fiber. (See Applegate Decl. (ECF No. 86) at 1.) He was not one of the laid off employees temporarily recalled in January 2009. At the time Applegate was laid off, he was working as a development technician and earned approximately $16.20 per hour. (See id.) On April 18, 2012, Applegate filed an Amended Class Action Complaint against Formed Fiber, asserting that Formed Fiber violated the WARN Act and asking that the Court certify a class of plaintiffs.[2] Applegate's Complaint asserts that Formed Fiber's February 11th announcement provided potentially affected employees the first written notice that the December and January layoffs might be considered a "mass layoff," as defined by the WARN Act, 29 U.S.C. § 2101(a)(3), and that Formed Fiber failed to provide sixty days' advance written notice of its "mass layoff," in violation of the WARN Act, § 2102(a).

---

[2] Applegate first sought to define the plaintiff class as:

> employees employed by Formed Fiber at its Auburn, Maine facility who were laid off beginning on or about December 15, 2008 and continuing thereafter who were not provided written notice of a mass layoff until on or about February 11, 2009. The class would include all "affected employees" as that term is defined in … the WARN Act, 29 U.S.C. § 2102(a)(5).

(See First Amended Complaint (ECF No. 84) ¶ 6.)

4

## III. THE WARN ACT AND THE ALLEGED VIOLATION BY DEFENDANT

The WARN Act prohibits employers of 100 or more employees from ordering a "a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). See also Order on Motion for Summary Judgment, 2012 WL 1247260, at *5. Failure to provide a WARN Act notice subjects an employer to potential civil liability and civil penalties by providing a cause of action for any employee who suffers a covered employment loss without having received the statutorily-required notice. See 29 U.S.C. § 2104. The Act itself expressly emphasizes the appropriateness of class-based proceedings to enforce the law and to obtain statutory relief: "A person seeking to enforce such liability … may sue either for such person or for other persons similarly situated, or both, in any district court of the United States…." See 29 U.S.C. § 2104(a)(5). Accordingly, courts have regularly held that the WARN Act is "particularly amenable" to class-based litigation.[3] In re Protected Vehicles Inc., 397 B.R. 339, 344 (D.S.C. 2008) (citing In re Spring Ford Indus., Inc., No. 02–15015-DWS, 2004 WL 231010, at *6 (Bkrtcy. E.D. Pa. Jan. 20, 2004); Finnan v. L.F. Rothschild & Co., Inc., 726 F. Supp. 460, 465 (S.D.N.Y. 1989)); Cashman v. Dolce Intern./Hartford, Inc., 225 F.R.D. 73, 90 (D. Conn. 2004) ("Because WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation."). See also Day v. Celadon Trucking Services, Inc., No. 4:09-CV-00031-SWW, 2010 WL 3270760, at *5 (E.D. Ark. Aug. 16, 2010) (stating that an employer's failure "to give notice as required under the WARN Act depends on the resolution of issues that are common to all class members, and the question is particularly well-suited for class action procedure").

---

[3] In fact, Formed Fiber "does not dispute that WARN Act claims are in principle amenable to class-based litigation." (See Opposition to Motion to Certify Class (ECF No. 91) at 3.)

Applegate alleges that he and other similarly situated former employees who worked at Formed Fiber's Auburn, Maine facility were terminated in a "mass layoff," as defined by the WARN Act, § 2101(a)(3), in December 2008 and January 2009; that these former employees are "affected employees," as defined by 29 U.S.C. § 2104(a)(5); that these former employees did not receive 60 days' advance written notice of the mass layoff from Formed Fiber, as required by the WARN Act; and that Formed Fiber failed to pay them 60 days' wages and fringe benefits, as required by the WARN Act.  (See First Am. Compl. (ECF No. 84).)

## IV.   CLASS CERTIFICATION

Applegate seeks class certification, asserting that the requirements of Rule 23 are met here.  He asks that the Court certify a class of plaintiffs that includes the following individuals:

> (1) all employees employed by Formed Fiber at its Auburn, Maine facility who were laid off on or about December 15, 2008; and (2) who were not provided written notice of a mass layoff until on or about February 11, 2009; and (3) who were not recalled after the December 15, 2008 layoff or who were recalled in January 2009 and laid off again prior to receiving the February 11, 2009 notice.

(See Pl.'s Reply Br. at 3-4 (ECF No. 92).)[4]  Applegate concedes that the class should not include employees who resigned from Formed Fiber after being laid off and states that he mistakenly failed to include in the class definition cited above a requirement that the class definition also include employees laid off by Formed Fiber in December 2008 "who did not resign within six months of the layoff."  (See Pl.'s Response to Def.'s Mot. to File Sur-Reply (ECF No. 96) at 2.)  Accordingly, Applegate asks that the Court include this additional provision in the class definition under consideration.  For the purpose of deciding the instant Motion, the Court

---

[4] This definition is the result of the back-and-forth revisions by the parties during briefing.  The Court ultimately considers this latest proposed definition and the additional qualifier proposed by Defendant in its reply brief and accepted by Plaintiff:  that the class definition exclude employees laid off by Formed Fiber in December 2008 "who did not resign within six months of the layoff."

GRANTS this request and excludes from the class definition employees who left their employment with Formed Fiber less than six months after being laid off. Formed Fiber opposes class certification, arguing that Applegate seeks certification of an impermissibly overbroad class that cannot satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Additionally, Formed Fiber asserts that Applegate fails to satisfy the predominance and superiority requirements of Rule 23(b)(3).

### A. The Rule 23(a) Requirements

#### 1. Numerosity

Applegate contends that he has met his burden of establishing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[t]here is no threshold number of class members that automatically satisfies this requirement," Van Meter v. Harvey, 272 F.R.D. 274, 281 (D. Me. 2011), the First Circuit suggests that numerosity is generally satisfied if "the potential number of plaintiffs exceeds 40." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)). See also Carrier v. JPB Enters., Inc., 206 F.R.D. 332, 334 (D. Me. 2002) ("while the absolute size of the class is not dispositive, … a class of more than 40 individuals raises a presumption that joinder is impracticable") (citing Herbert Newberg, Newberg on Class Actions § 3.05 at 3-25 (3rd ed. 1992)); Campbell, 269 F.R.D. at 74 (citing Mitchell-Tracey v. United Gen. Title Ins., 237 F.R.D. 551, 556-57 (D. Md. 2006) (certifying class based on finding that there were more than 40 class members)). The actual number of class members is not necessarily determinative, however; the Court may also consider a variety of other factors – including, "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." Zeidman v. J. Ray

McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981). See also 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762, at 206-08 (3d ed. 2005).

Applegate asserts that there are between 120 and 162 putative class members, based on stipulations filed by the parties exclusively for the purpose of summary judgment. Applegate also asserts that because the WARN Act requires that employers provide written notice to affected employees only in advance of a "mass layoff," which by definition involves at least 50 employees, Formed Fiber would not have sent laid off employees advance written notice of a likely mass layoff unless at least 50 employees would be affected.[5] Therefore, Applegate contends that the putative class must contain at least 50 potential plaintiffs, if not 120 to 162 plaintiffs.

Formed Fiber responds that Applegate fails to provide adequate evidentiary support for his estimate of a class size consisting of between 120 and 162 plaintiffs. Moreover, Formed Fiber contends that approximately 40 of the workers it laid off in December 2008 were recalled to work in January 2009 and that those recalled employees cannot be counted as part of a potential class of between 120 and 162 plaintiffs because the recalled employees did not experience an "employment loss" as the term is defined by 29 U.S.C. § 2101. Formed Fiber also attacks Applegate's contention that the putative class contains at least 50 members because the February 11th announcement was sent to employees who did not experience an employment loss and therefore have no WARN Act claim against Formed Fiber. Specifically, Formed Fiber contends that at least one laid off employee who received the February 11th announcement,

---

[5] Applegate's reasoning stems from the language of the WARN Act, which defines "mass layoff" as a reduction in force which: (1) "is not the result of a plant closing;" (2) "results in an employment loss at a single site during any 30-day period for … at least 33 percent of the employees (excluding part-time employees);" and (3) involves "at least 50 employees (excluding part-time employees)."

Steven Nelson, left his employment with Formed Fiber less than six months after the alleged mass layoff and therefore did not experience an employment loss that would entitle him to relief under the WARN Act. (See Nelson, 2012 WL 1247260, at *5-7 (granting summary judgment based on finding that employee who left his employment less than six months after being laid off did not experience an "employment loss" and therefore was not entitled to relief under the WARN Act).)

Based on the current record, the Court concludes that the proposed class is sufficiently numerous such that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). See also McCuin v. Secretary of Health and Human Services, 817 F.2d 161, 167 (1st Cir. 1987) (stating that "district courts may draw reasonable inferences from the facts presented to find the requisite numerosity"). The February 11th notification letter establishes that there are potentially at least fifty plaintiffs who were subjected to a mass layoff without adequate WARN notice. Formed Fiber has shown that one recipient of the February 11th notification is not an affected employee and therefore not a potential plaintiff. This leaves at least forty-nine potential plaintiffs, a number the Court considers sufficiently numerous for the purpose of Rule 23(a)(1) under the circumstances of this case. Moreover, the additional factors relevant to the numerosity determination – the ease in identifying other class members, the nature of the action, the size of each plaintiff's claim, judicial economy, and the ability of the members to institute individual suits – weigh in favor of finding that "joinder of all members is impracticable."[6] Fed. R. Civ. P. 23(a)(1).

---

[6] In particular, the Court finds that the relatively small size of each plaintiff's claim would discourage many former Formed Fiber employees with potential WARN Act claims from pursuing their claims individually.

### 2. Commonality

Rule 23(a)(2) requires the Court to find that "there are questions of law or fact common to the class." The First Circuit has noted that the commonality requirement presents a "low bar." Campbell, 269 F.R.D. at 75 (citing In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008)). Here, common questions include whether a mass layoff occurred at Formed Fiber's facility in Auburn, Maine, and, if so, when the mass layoff occurred, whether Formed Fiber provided sixty days' advance notice of a mass layoff, whether Formed Fiber violated the WARN Act by executing a mass layoff without providing sixty days' advance written notice, and whether, and in what amount, laid off employees are entitled to damages in the form of wages and fringe benefits for any period of WARN Act violation.

Formed Fiber contends that the proposed class violates the commonality requirement of Rule 23(a) because it includes approximately forty employees who were recalled to work after experiencing a layoff of less than six months – specifically, those employees who were laid off in December 2008 but who were recalled to work in January 2009.[7] However, the employees who were laid off and then temporarily recalled in January 2009 properly fall within the class definition because their claims and Applegate's claims involve the same legal and factual questions. The only difference between Applegate and the temporarily re-hired workers involves the amount of recovery – those employees who were temporarily recalled may receive less in damages than plaintiffs such as Applegate who were not recalled.

---

[7] Formed Fiber also argues that the proposed class definition provided in Applegate's Amended Complaint is overbroad because it purports to include all "affected employees" as the term is defined in the WARN Act. Specifically, Formed Fiber contends that the proposed class of plaintiffs cannot include those employees who were laid off but who left employment at Formed Fiber less than six months after the alleged "mass layoff" because such employees did not experience an "employment loss" under the WARN Act. In light of this argument, Plaintiff has agreed to revise its class definition to exclude employees who left employment at Formed Fiber less than six months after any mass layoff.

10

In short, virtually all of the major issues are common to the proposed class and the only differences are minor. As other courts have noted, the fact that class members suffered different damages does not bar class certification. See Guippone v. BH S&B Holdings LLC, et al., No. 09-Civ.-1029(CM), 2011 WL 1345041, at *5 (S.D.N.Y. Mar. 30, 2011). Where class members have different degrees of injury or even where defenses might exist only as to particular individuals, commonality has been found for class certification. See id. (citing Newberg on Class Actions § 3.04 (4th ed. 2002). Indeed, class action suits under the WARN Act almost always involve a class comprised of persons with different positions, different pay, and who may have been terminated on different dates. See id. (collecting cases).

### 3. Typicality

Applegate must also prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." Campbell, 269 F.R.D. at 75 (citing In re Credit Suisse-AOL Securities Litig., 253 F.R.D. 17, 23 (D. Mass. 2008)). "Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." Trinidad v. Breakaway Courier Systems, Inc., No. 05-Civ-4116-RWS, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir.1996)). Furthermore, as in the commonality inquiry, "a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." Id. (quoting Duprey v. Conn. Dep't of Motor Vehicles, 191 F.R.D. 329, 337 (D. Conn. 2000) (citing Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994))).

While Formed Fiber contends that Applegate's claim is not typical or representative of the members of his proposed class, the Court disagrees. The claims of the proposed class are based on the same legal theory – that Formed Fiber violated their rights under the WARN Act by failing to provide notice of mass layoff sixty days before the mass layoff commenced. Moreover, plaintiffs' alleged injuries arise from the same events – namely, the alleged mass layoffs at Formed Fiber's Auburn plant in December 2008 and January 2009 that were not preceded by sixty days' advance notice. The fact that some employees were briefly recalled to work in January 2009 does not defeat typicality. The difference between Applegate and the briefly recalled workers affects only the amount of damages; it does not change the fact that underlying legal claim and the course of conduct giving rise to that claim are the same.

### 4. Adequacy

Finally, the Court must find that the representative party, in this case, Applegate, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[8] This element requires a two-step showing: "first, 'that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" Van Meter, 272 F.R.D. at 283 (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)). See also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

The first element of Rule 23(a)(4) is met in this case because no divergence exists between the interests of Applegate and the interests of the class as a whole. As discussed above, the fact that other class members held different positions, were terminated at different times, and may have been recalled to work for a brief stint in January 2009 does not change the basic fact

---

[8] To the extent that Rule 23(a)(4) also requires the Court to consider whether counsel is qualified to represent the class, Formed Fiber does not contest the issue, and the Court finds based on counsel's extensive experience that counsel is qualified to represent the class.

that the interests of Applegate are directly in line with the interests of other class members. Contrary to Formed Fiber's assertion that Applegate has no reason to pursue the potential claims of employees recalled to work after December 2008, Applegate has every reason to press the issue of whether temporarily recalled employees were subjected to a "mass layoff" without receiving proper WARN notice.[9]

The second element of Rule 23(a)(4) is met because Plaintiff's counsel is "qualified, experienced and generally able to conduct the proposed litigation." The background of Plaintiff's counsel has been set forth in detail. The Court is familiar with counsel's extensive experience and readily finds they have the experience necessary to prosecute the proposed WARN Act case on behalf of the proposed class.

### B. The Rule 23(b)(3) Requirements

If a proposed class can meet its burden on the four Rule 23(a) prerequisites, the Court must then determine what type of class action can be maintained. Rule 23(b) lists three different types. In his Motion, Applegate seeks to have that the proposed class certified under Rule 23(b)(3), which essentially is "a joinder device for consolidating separate but similar claims." Campbell, 269 F.R.D. at 77 (quoting Tardiff v. Knox County, 365 F.3d 1, 4 (1st Cir. 2004)). This subsection requires the Court to find: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule explicitly lists the following factors for the Court to consider in making this determination:

---

[9] Formed Fiber also contends that Applegate fails the adequacy prong because he seeks to represent potential plaintiffs, such as Steven Nelson, who left Formed Fiber less than six months after being laid off. This contention is now moot, as Applegate's proposed class, as revised, does not include potential plaintiffs who left Formed Fiber less than six months after being laid off.

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). See also Amchem Prods., Inc., 521 U.S. at 616.

Having considered all of these factors, the Court finds on the current record that the proposed class meets the requisites of predominance and superiority and can be maintained as a Rule 23(b)(3) class.

### 1. Predominance

The predominance inquiry essentially asks the same question posed as commonality under Rule 23(a)(2), however, the bar is set significantly higher. See Campbell, 269 F.R.D. at 78 (citing In re PolyMedica Corp., 432 F.3d 1, 4 n.5 (1st Cir. 2005) ("This [predominance] requirement, although reminiscent of the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (internal quotations and citations omitted)). The heart of the predominance inquiry is whether the "uncommon questions" outweigh the commonalities. In re Light Cigarettes Marketing Sales Practices Litigation, 271 F.R.D. 402, 416 (D. Me. 2010) (quoting Amchem, 521 U.S. at 624). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." Id. (quoting Smilow, 323 F.3d at 39). Put another way, there must be a "sufficient constellation of common issues bind[ing] class members together." Id. (quoting Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)). In order to make this determination, "a district court must formulate some

prediction as to how specific issues will play out." Id. at 298 (quoting Mowbray, 208 F.3d at 296).

Formed Fiber's first predominance objection – that the class includes individuals who lack standing because they left Formed Fiber less than six months after being laid off – has already been addressed. Applegate's proposed class will not include such individuals. Formed Fiber's second objection relates to its affirmative defenses – namely, that common questions are lacking because Formed Fiber's affirmative defenses would have to be addressed on an individualized basis if a class were certified including recalled employees. Defendant cites no case involving the WARN Act in support of this argument; rather, Defendant cites In re Light Cigarettes Marketing Sales Practices Litigation, which said that:

> "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." Smilow, 323 F.3d at 39. However, the First Circuit also recognizes that "affirmative defenses should be considered in making class certification decisions," although not as a per se bar. Mowbray, 208 F.3d at 295–96. As the Plaintiffs bear the burden to show compliance with Rule 23, they also bear the burden to demonstrate "that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis." Thorn v. Jefferson–Pilot Life Ins. Co., 445 F.3d 311, 321–22 (4th Cir. 2006).

271 F.R.D. at 419.

Defendant's argument is misplaced. The proposed class consists of employees who allegedly are all part of a single "mass layoff," and at this time the Court sees no reason to believe that Formed Fiber's affirmative defenses would be different with respect to different individual plaintiffs.[10] Contrary to Defendant's contention, there is no reason to believe that these defenses might apply differently to different individual plaintiffs. Despite the fact that potential plaintiffs may have been laid off at different times and some may have been recalled

---

[10] In its briefing, Formed Fiber highlighted the following affirmative defenses: reasonable foreseeability concerning the duration of the layoff (Second Affirmative Defense); good faith (Third Affirmative Defense); and compliance with the WARN Act (Fifth Affirmative Defense).

15

temporarily, the case involves a common, overarching question – were the plaintiffs subjected to a mass layoff without adequate notice? – and the affirmative defenses cited by Formed Fiber apply equally to each potential plaintiff. Even if Formed Fiber's affirmative defenses do not apply equally to each plaintiff, affirmative defenses are not a per se bar to class certification. See id. (citing Mowbray, 208 F.3d at 295-96). Were the Court to adopt Defendant's argument, certifying a class of plaintiffs in a WARN Act case would be particularly difficult because each potential plaintiff would be forced to try his or her case individually. Such a result would undermine the statutory language of the Act, which specifically provides that "a representative of employees or a unit of local government … may sue either for such person or for other persons similarly situated, or both…." 29 U.S.C. § 2104(a)(5).

As already set forth above, it is clear that common questions predominate in this case. Those questions include: (1) whether a mass layoff occurred at Formed Fiber's facility in Auburn, Maine, and, if so, (2) when the mass layoff occurred, (3) whether Formed Fiber provided sixty days' advance notice of a mass layoff, (3) whether Formed Fiber violated the WARN Act by executing a mass layoff without providing sixty days' advance written notice, and (4) whether, and in what amount, laid off employees are entitled to damages in the form of wages and fringe benefits for any period of WARN Act violation. The fact that some employees were recalled temporarily in January 2009 affects only the amount of damages; it does not change the fact that common questions are central to resolution of this case.

### 2. Superiority

The First Circuit has said that, in evaluating whether superiority is satisfied, the district court should consider, "whether the putative class members could sensibly litigate on their own for these amounts of damages." Campbell, 269 F.R.D. at 79 (quoting Gintis v. Bouchard Transp.

16

Co., Inc., 596 F.3d 64, 68 (1st Cir. 2010)). In this case, it is clear that damages per putative class member are small and are unlikely to be litigated on an individual basis. The Court therefore finds that the class members' interests in individually controlling the prosecution of separate actions is minimal. Concentrating any WARN litigation in a single class action will avoid multiple suits and will maximize judicial economy, efficiency, and uniformity of outcomes for similarly situated individuals. See Carrier, 206 F.R.D. at 334-35. Finally, the Court is unaware of particular difficulties associated with the management of this class action. Whether Formed Fiber failed in a duty to give notice as required under the WARN Act is particularly well-suited for class action procedure: the class members can be easily identified through discovery, the potential liability of Formed Fiber can be readily calculated, and there is but one combined course of conduct – that of Formed Fiber – to examine and adjudicate. See Guippone, 2011 WL 1345041, at 8.

## V. CONCLUSION

As explained herein, the Court finds that the current record supports certification of the following class under Rule 23(b)(3):

(1) all employees employed by Formed Fiber at its Auburn, Maine facility who were laid off on or about December 15, 2008; and

(2) who were not provided written notice of a mass layoff until on or about February 11, 2009; and

(3) who were not recalled after the December 15, 2008 layoff or who were recalled in January 2009 and laid off again prior to receiving the February 11, 2009 notice; and

(4) who did not resign within six months of the layoff.

   In light of the Court's decision to certify the above class, the Court hereby ORDERS that the parties shall meet and confer on the form and content of a proposed class notice that satisfies Rule 23(c)(1)(B).  The parties shall present any jointly proposed class notice proposal by August 24, 2012.  If the parties are unable to reach an agreement on a joint proposal, Plaintiff shall file a motion for approval of his proposed class notice plan.  Defendant shall respond to any such motion in accordance with the local rules and specifically noting any aspects of the plan to which it does not object.

   For the foregoing reasons, the Court ORDERS that Plaintiff's Motion to Certify Class (Docket # 85) is hereby GRANTED.


   SO ORDERED.

                   /s/ George Z. Singal
                   United States District Judge

Dated this 27th day of July, 2012.